UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
HOWARD KURLENDER,

**REPORT AND
RECOMMENDATION**

                              Plaintiff,                    CV 18–3839 (JFB)(AYS)


             -against-


THE IRONSIDE GROUP, INC., and
TRINET GROUP, INC.,

                              Defendants.
-------------------------------------------------X
**SHIELDS, Magistrate Judge,**

       Pro se plaintiff Howard Kurlender ("Kurlender" or "Plaintiff") commenced this

employment discrimination action in the State Court of the State of New York against defendants

The Ironside Group, Inc. ("Ironside") and TriNet Group, Inc. ("TriNet") (collectively

"Defendants"). The action was thereafter removed to this Court on the basis of the parties'

diversity of citizenship. See Docket Entry herein ("DE") [1]. After Defendant Ironside moved to

dismiss, the District Court held a telephone conference.  Following that conference, Plaintiff

filed an amended complaint (the "Amended Complaint"). See DE [5] [13] [15]. The Amended

Complaint alleges claims against Defendants in violation of Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Americans with Disabilities Act, 42 U.S.C.

§ 12112 et seq. ("the ADA").

       Presently before this Court, upon referral by the Honorable Joseph F. Bianco for Report

and Recommendation, see DE [28], [33], are Defendants' separate motions to dismiss the

Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  DE

[21], [30].  For the reasons set forth below, this Court respectfully recommends that the motions

be denied in their entirety, and that this case proceed to discovery.

BACKGROUND

I.      Documents Considered

As is required in the context of this motion to dismiss, the factual allegations in the

Amended Complaint, though disputed by Defendants, are accepted to be true for purposes of

these motions, and all reasonable inferences are drawn therefrom in favor of the Plaintiff.

While facts to consider in the context of a Rule 12 motion to dismiss are generally limited

to those set forth in the pleadings, a court may consider matters outside of the pleadings under

certain circumstances. Specifically, a court may consider: (1) documents attached to the

Complaint as exhibits or incorporated by reference therein; (2) matters of which judicial notice

may be taken; or (3) documents upon the terms and effects of which the Complaint "relies

heavily" and which are, thus, rendered "integral" to the Complaint."  Chambers v. Time Warner,

Inc., 282 F.3d 147, 152-153 (2d Cir. 2002); see Int'l Audiotext Network, Inc. v. Am. Tel. and

Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995).  Moreover. "[a] court may take judicial notice of a

documents filed in another court not for the truth of the matters asserted in the other litigation,

but rather to establish the fact of such litigation and related filings."  Glob. Network Commc'ns,

Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (quoting Int'l Star Class Yacht

Racing Ass'n Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998)).

Where, as here, the complaint was filed pro se, it must be construed liberally with

"special solicitude" and interpreted to raise the strongest claims that it suggests.  Hill v.

Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks omitted).  Nonetheless,

a pro se complaint must state a plausible claim for relief.  See Harris v. Mills, 572 F.3d 66, 73

2

(2d Cir. 2009). The Court turns now to discuss the facts set forth in Plaintiff's Amended Complaint, construed in his favor.

II.     Facts

    A.     Plaintiff's Employment

Kurlender was employed by Ironside as a Solution Architect between July 2016 and February 2017. See Am. Compl. ¶ 1 at p. 12, DE [15]. During Plaintiff's employment, Ironside had a service agreement with TriNet, a professional employer organization, to provide payroll and administrative services to Ironside's employees. Id.; Trinet Group Inc.'s Mem. of Law in Supp. of Mot. to Dismiss ("TriNet Br."), at 5, DE [30-1].[1] Kurlender's employment was terminated on February 3, 2017. Am. Compl. ¶ 1.

As discussed below, and construed liberally, the Amended Complaint alleges facts in support of claims of Title VII hostile environment, ADA disability discrimination in the form of a failure to accommodate, and retaliation in violation of both Title VII and the ADA.

    B.     Facts Alleged In Support of Plaintiff's Title VII Hostile Environment Claims

The Amended Complaint sets forth specific dates when Plaintiff alleges to have been the victim of Title VII sexual harassment. First, Plaintiff alleges that on July 27, 2016, shortly after beginning his employment, he attended a company-sponsored event at Cape Cod, Massachusetts. Am. Compl. ¶ 2. At this event, Plaintiff witnessed the harassment of a female co-worker by a male co-worker. Id. Kurlender states that he attempted to intervene on the female co-worker's behalf and that thereafter, he experienced "unwanted touching" by the male co-worker. Id. Plaintiff told Bryan Welch, a Regional Sales Manager, about the incident that day, and Mr.

---

1. For ease of reference, page numbers for exhibits referenced herein are numbers assigned to pages on electronically filed documents, and not to the underlying documents themselves.

Welch informed Plaintiff that he would let his manager know about the incident. Am. Compl. ¶ 4.  Plaintiff claims that despite his reporting of the incident, it was never addressed. Id.

In addition to the incident above, Plaintiff alleges that he suffered a hostile working environment approximately every three-four weeks during his employment. He characterizes these incidents as evidencing a pattern of an "institutionalized" misogynistic culture. In particular, Plaintiff refers to the taking of an unsolicited and "humiliating" picture of himself that was emailed to him during the Cape Cod retreat. Am. Compl. ¶ 3.  He also refers to being present when Ironside Chief Executive Officer, Timothy Kreytak ("Kreytak") bragged about meeting women at business conferences, and displayed a photo with himself and two women as proof. Id. ¶ 6; 3. He additionally refers to being embarrassed at a dinner meeting with a customer when Kreytak used profanity, id. ¶ 8; and Plaintiff also makes reference to being intimidated by his supervisor, Greg Bonnette ("Bonnette"), when Bonnette said he would hang a fellow co-worker "out-to-dry" during a phone conversation, id. ¶ 7, and being insulted by a male co-worker during a customer dinner. Id. ¶ 10.

    C.    Facts Alleged in Support of Plaintiff's ADA Claim

Kurlender alleges that he is "physically disabled" and has "severe limitations on mobility." Am. Compl. ¶ 5. He claims that Defendants were put on notice of his disabled status when he indicated this information on the "New Employee Personal Information" form he submitted in June 6, 2016. Am. Compl., Claim 3 at p. 10.

Plaintiff alleges that he was discriminated against based on his disability when he requested that he be allowed to book a direct flight to a conference on October 2016, and Ironside denied his request. Am. Compl. ¶ 9. Plaintiff characterizes his request for a direct flight as a request to accommodate his disability.  He states that Defendants improperly responded only

by enforcing a "no exceptions / no-accommodations policy" and did not ask him to provide proof of his disability. Id.

     D.    <u>Allegations of Retaliation</u>

     Plaintiff's Amended Complaint states that he was terminated in retaliation for reporting what he witnessed at the Cape Cod retreat. He also refers, in more general terms, to the inefficacy of Defendants' human resources department. The Amended Complaint also states generally that Plaintiff's termination was "because of retaliation" for speaking out and being a victim of sexual harassment "as well as discrimination of the disabled". DE [15] at 14.

III.    <u>Procedural History</u>

     On February 5, 2018, Plaintiff filed a charge of discrimination against Ironside with the EEOC. Am. Compl., Section IV. A. On February 20, 2018, the EEOC issued Plaintiff a Right to Sue letter. Am. Compl., Ex. D. This action was thereafter commenced on May 21, 2018 in New York State Supreme Court, County of Nassau.  <u>See</u> Compl., DE [1-1].  On July 2, 2018, Defendants removed the action to this Court on the basis of diversity jurisdiction. <u>See</u> DE [1]. On July 9, 2018, Ironside filed a motion to dismiss, <u>see</u> DE 5, which Plaintiff opposed in a letter dated July 18, 2018. <u>See</u> DE [11]. The District Court held a telephone conference on July 20, 2018, at which time Ironside's motion to dismiss was terminated, and Plaintiff was directed to file an amended complaint by July 31, 2018. <u>See</u> DE [13]. The District Court also set a briefing schedule for Ironside's motion to dismiss Plaintiff's soon to be filed amended complaint. <u>Id.</u> On July 31, 2018, Plaintiff filed his Amended Complaint, <u>inter alia</u>, adding TriNet as a defendant. <u>See</u> DE [15].

     On August 24, 2018, Ironside filed its motion to dismiss. <u>See</u> DE [21]. On September 17, 2018, TriNet sought leave to file a motion to dismiss, <u>see</u> DE [26], which was granted on

September 18, 2018.  See DE [27].  TriNet then filed its motion to dismiss on October 18, 2018.

See DE [30].  Upon briefing of the motions, they were referred to this Court for report and

recommendation.  See DE [28], [33].

IV.   Claims in the Amended Complaint

As noted, the Amended Complaint alleges claims pursuant to Title VII and the ADA. In

sum and substance, Plaintiff alleges that he was subjected to a hostile work environment in

violation of Title VII, and denied a reasonable accommodation in violation of the ADA.  He also

asserts Title VII and ADA retaliatory termination.

In particular, Claims 1 and 2 of the Amended Complaint set forth Plaintiff's allegations

of sexual harassment. Those claims allege that Plaintiff was subject to unwanted touching and

that Defendants failed to provide a safe work environment. Plaintiff makes particular reference to

the allegations summarized above. He states that such behavior violates Title VII, as well as the

Trinet "Employee Handbook". DE [15] at 9-10. Claim 3 of the Amended Complaint is addressed

to Plaintiff's ADA claim. That claim alleges that Defendants' failure to accommodate Plaintiff's

travel request violated the ADA.

Claim 4 is a claim for retaliation which asserts that Defendants ignored Plaintiff's

complaints of sexual harassment, and that "the only reason for Plaintiff to have been terminated

was his refusal to participate in the abusive culture, through misogynistic comments, offensive

binge drinking or harassing behavior and his outspoken opposition to unlawful acts of

discrimination and harassment."  DE [15] at 11. Despite the fact that Claim 4 references

retaliation "only" with respect to Title VII issues of sexual harassment, the factual statement of

claim is broader. There, Plaintiff states that he was terminated "because of retaliation for his

outspoken and demonstrated opposition to witnesses and experienced sexual harassment as well as discrimination of the disabled." DE [15] at 14.

V.      The Motions to Dismiss

Defendants move separately to dismiss all claims. Ironside contends that dismissal is warranted because Plaintiff has not alleged sufficient facts to state either Title VII or ADA claims. TriNet moves also on the separate ground that dismissal is warranted because it was not named in Plaintiff's EEOC complaint, and it was Plaintiff's employer. Thus, TriNet argues that Plaintiff failed to exhaust his administrative remedies as it was unaware of Plaintiff's claims until he filed the Amended Complaint herein.

Having summarized the relevant facts, the Court turns to the merits of the motion.

## DISCUSSION

I.      Legal Principles: Standards Applicable on Motions to Dismiss

A.      Rule 8(a)

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Pleadings are to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 346, 125 S. Ct. 1627, 161 L.Ed.2d 577 (2005) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957), overruled in part on other grounds by Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 555, 127 S. Ct. 1955). "A pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555, 127 S. Ct. 1955).

    B.    Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (quoting, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Arista Records, LLC v. Doe 3, 604 F.3d 110, 119–20 (2d Cir. 2010). Facial plausibility is established by pleading sufficient factual content to allow a court to reasonably infer the defendant's liability. Twombly, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 555. Nor is a pleading that offers nothing more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," sufficient. Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 555).

District courts are "obligated to construe pro se complaint [s] liberally," Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), interpreting them "to raise the strongest arguments that they suggest," Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). Courts may not, however, read into pro se submissions claims inconsistent with the pro se litigant's allegations, Phillips v. Girdich, 408 F.3d 124, 127 (2d Cir. 2005) (citation omitted), or arguments that the submissions themselves do not "suggest," Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006). Pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted).

With these standards in mind, the Court turns to assess the viability of Plaintiff's claims.

II.    Failure to State a Claim

     A.    ADA Claims

     1.    General ADA Legal Principles

The ADA establishes that no covered entity "shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To plead a prima facie case of discrimination under the ADA, a plaintiff must show that: "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of [her] disability." McMillan v. City of New York, 711 F.3d 120, 125 (2d Cir. 2013) (quoting Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006)) (quotation marks omitted).

While a plaintiff is not required to make out a prima facie case in order to survive a motion to dismiss, the elements of the claim are instructive in analyzing whether a plaintiff has alleged sufficient facts giving rise to a claim. See Bernadotte v. N.Y. Hosp. Med. Ctr. of Queens, 2014 WL 808013, at *7 (E.D.N.Y. Feb. 28, 2014). Thus, to succeed at the pleading stage in an ADA claim, "a plaintiff must plausibly allege that (1) her employer took an adverse action against her, and (2) the disability or perceived disability was a 'motivating factor' in the decision." Miller v. N.Y.C. Dep't of Educ., 2016 WL 5947272, at *1–3 (E.D.N.Y. Oct. 12, 2016) (citing Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 84-87 (2d Cir. 2015)) (dismissing claim for failure to provide facts that connected potential discrimination to Plaintiff's torn ligament and spinal damage).

Under the ADA, the term "disability" means: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include performing manual tasks, eating, walking, standing lifting, and working. 42 U.S.C § 12102(2)(A). "A major life activity also includes the operation of a major bodily function, including ... reproductive functions. 42 U.S.C. § 12102(2)(B). To determine if a major life activity is substantially limited, courts in this Circuit rely on the EEOC regulations. See Anderson v. Nat'l Grid, PLC, 93 F. Supp. 3d 120, 133 (E.D.N.Y. 2015) (quoting Francis v. City of Meriden, 129 F.3d 281, 283 n.1 (2d Cir. 1997)). Under those regulations, "[t]he term substantially limits shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA and is not meant to be a demanding standard." Parada v. Banco Indus. De Venezuela, C.A., 753 F.3d 62, 69 n.3 (2d Cir. 2014) (quoting 29 C.F.R. § 1630.2(j)(1)(i)) (internal quotation marks omitted). Accordingly, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." Id. (quoting 29 C.F.R. § 1630.2(j)(1)(ii)) (internal quotation marks omitted).

2.    ADA Failure to Accommodate

To establish a claim for failure to accommodate under the ADA, a plaintiff must demonstrate that: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." McMillan, 711 F.3d at 125–126 (quoting McBride v. BIC Consumer Prod. Mfg. Co., 583 F.3d 92, 97 (2d Cir. 2009)). The

Second Circuit has held that, "in defining discrimination to include the failure to make reasonable accommodation for an otherwise qualified employee's known disability, [the ADA] does not require an employer to make accommodation for an impairment that is not a disability within the meaning of the Act or that does not result from such a disability." Buckley v. Consol. Edison Co. of N.Y., Inc., 155 F.3d 150, 156 (2d Cir. 1998).

"Liability for failure to provide a reasonable accommodation ensues only when the employer is responsible for a breakdown in that process." Thompson v. City of New York, 2006 WL 2457694, at *4 (S.D.N.Y. Aug. 10, 2006) report and recommendation adopted, 2006 WL 6357978 (S.D.N.Y. Sept. 11, 2006) aff'd sub nom. Thompson v. New York City Dept. of Prob., 348 F. App'x 643 (2d Cir. 2009). "An employer impedes the process when: the employer knows of the employee's disability; the employee requests accommodations or assistance; the employer does not in good faith assist the employee in seeking accommodations; and the employee could have been reasonably accommodated but for the employer's lack of good faith." Bohen v. Potter, 2009 WL 791356, at *13 (W.D.N.Y. Mar. 23, 2009) (citing Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1045 (8th Cir. 2005) (citation omitted)). Courts must deny motions to dismiss or motions for summary judgment when presented with conflicting facts about the provenance of a breakdown, see, e.g., id. at *14, but in the absence of a factual dispute may grant such motions, see, e.g., Gingold v. Bon Secours Charity Health Sys., 768 F. Supp. 2d 537, 544 (S.D.N.Y. 2011); Donofrio v. New York Times, 2001 WL 1663314 (S.D.N.Y. Aug. 24, 2001) report and recommendation adopted, 2002 WL 230820 (S.D.N.Y. Feb. 14, 2002).

3.    ADA Retaliation

Title V of the ADA prohibits employers from retaliating against employees for engaging in protected activities. 42 U.S.C. § 12203(a); see Warren v. Goord, 2008 WL 5077004, at * 1 – 2

11

(2d Cir. Nov. 26, 2008). For an ADA retaliation claim to survive a motion to dismiss, a plaintiff must allege sufficient facts to plausibly show that "(1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." Sarno v. Douglas Elliman–Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999).

      4.    <u>Disposition of Motions as to Plaintiff's ADA Claims</u>

As discussed above and construed liberally, Plaintiff's ADA claim is two-fold. First, he claims a failure to accommodate his disability. This claim stems from the alleged failure of Ironside to accommodate Plaintiff's health-related request for a direct flight as described above. Second, he claims retaliatory dismissal.

As to both branches of his ADA claim, Plaintiff alleges that he is disabled because of "chronic limitations in mobility/walking." Am. Compl. Section D. For purposes of this motion the parties agree that Plaintiff's limitations constitute a disability within the meaning of the ADA. They also agree that Ironside is a covered entity subject to the ADA, and that Plaintiff was qualified to perform the essential functions of his job. The issue presented is whether Plaintiff sets forth sufficient facts to plausibly support his claims of failure to accommodate and retaliation.

As discussed below, at this stage of the litigation, and in light of Plaintiff's <u>pro</u> <u>se</u> status, Plaintiff's claims are plausible and therefore not subject to dismissal.

First, as to his failure to accommodate claim, Plaintiff alleges that Defendants failed to approve his health-related travel request made on October 20, 2016. The Court concludes that Plaintiff has pleaded sufficient facts regarding Defendants' failure to accommodate "to state a

claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct 1955. In other words, Plaintiff has pleaded enough at this stage of the litigation to survive a motion to dismiss. Specifically, Plaintiff has alleged that: (1) he is a person with a disability; (2) that Defendants were on notice of the disability; (3) that he requested a travel accommodation to a conference that he was required to attend; and (4) Defendants denied the accommodation.

The Court recognizes that Ironside argues that they did not know of Plaintiff's disability and therefore cannot be held liable for failing to reasonably accommodate Plaintiff, see Ironside Br. at 8-9.  Plaintiff disputes this fact. This dispute precludes dismissal at the pleadings stage and, instead, warrants that the parties engage in discovery. See Gingold, 768 F. Supp. 2d at 544.

Turning to Plaintiff's ADA retaliation claim, the Court notes that this claim is somewhat thin. Indeed, there is no question that the Amended Complaint puts more emphasis on Title VII as a source of retaliation. Thus, as noted above, Plaintiff asserts at one point that "the only reason for Plaintiff to have been terminated was his refusal to participate in the abusive culture, through misogynistic comments, offensive binge drinking or harassing behavior and his outspoken opposition to unlawful acts of discrimination and harassment." DE [15] at 11. This language clearly refers only to Plaintiff's allegations of a hostile sexual environment. However, Plaintiff also states that he was terminated "because of retaliation for his outspoken and demonstrated opposition to witnessed and experienced sexual harassment as well as discrimination of the disabled." Am. Compl. ¶ 13 (emphasis added). The Court therefore broadly construes the pleading, to draw the required causal line between Plaintiff's request for an ADA accommodation and his termination.

For the foregoing reasons the Court recommends that the motion to dismiss Plaintiff's Amended Complaint with respect to Plaintiff's ADA claims be denied.

B.    Title VII Claims

1.    Title VII Hostile Environment

"Title VII of the Civil Rights Act of 1964 makes it 'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quoting 42 U.S.C. § 2000e–2(a)(1)). Under Title VII, employers may not require their employees "to work in a discriminatorily hostile or abusive environment." Id.

To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, ... creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected characteristic]." Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (internal citation and quotation marks omitted). While the Court must consider the "totality of the circumstances" when evaluating a hostile work environment claim, it may consider: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." Id. (internal citation and quotation marks omitted).

The standard for establishing a hostile work environment is "high." Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003). However, at the motion to dismiss stage, the Second Circuit has cautioned, "against setting the bar too high." Id. Thus, to avoid dismissal, "a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment ... of

such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" <u>Patane</u>, 508 F.3d at 113 (internal citation omitted).

    2.    <u>Title VII Retaliation</u>

 "To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action." <u>Patane</u>, 508 F.3d at 115; <u>see also</u> <u>Moy v. Perez</u>, 712 F. App'x 38, 40 (2d Cir. 2017) (summary order) (restating this standard as a four-part test).

Section 704(a) of Title VII prohibits an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). To warrant protection from retaliation under this clause, a plaintiff "need not show that the behavior he opposed in fact violated Title VII; he must, however, show that he 'possessed a good faith, reasonable belief that the employer's conduct qualified as an 'unlawful employment practice' under the statute." <u>Cooper v. N.Y. State Dep't of Labor</u>, 819 F.3d 678, 680-81 (2d Cir. 2016) (first quoting <u>Summa v. Hofstra Univ.</u>, 708 F.3d 115, 126 (2d Cir. 2013), and then quoting 42 U.S.C. § 2000e-3(a)). The reasonableness of such a belief is evaluated using an objective standard, "from the perspective of a reasonable similarly situated person." <u>Id.</u> (quoting <u>Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.</u>, 716 F.3d 10, 17 (2d Cir. 2013)). "[M]ere subjective good faith belief is insufficient," however. <u>Kelly</u>, 716 F.3d at 16. "[F]or a retaliation claim to survive a ... motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse

employment action—against him, (2) 'because' he has opposed any unlawful employment practice." <u>Vega</u>, 801 F.3d at 90.

To make out a Title VII retaliation claim, a plaintiff must allege facts raising a plausible inference that his protected activity was the "but-for" cause of his termination. <u>Vega</u>, 801 F.3d at 91. A plaintiff may raise such an inference through allegations of temporal proximity. <u>Cf.</u> <u>Kwan v. Andalex Grp. LLC</u>, 737 F.3d 834, 845 (2d Cir. 2013) ("[T]he but-for causation standard does not alter the plaintiff's ability to demonstrate causation at the prima facie stage ... indirectly through temporal proximity."). "Thus, causality can be supported, especially at the motion to dismiss stage, by pointing to a close temporal connection between protected activity and the alleged adverse action." <u>Lockwood v. Town of Hempstead</u>, 2017 WL 758491, at *7 (E.D.N.Y. Jan. 3, 2017). But "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." <u>Slattery v. Swiss Reinsurance Am. Corp.</u>, 248 F.3d 87, 95 2d Cir. 2001).

Although the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," <u>Gorman–Bakos v. Cornell Co-op. Extension of Schenectad Cty</u>, 252 F.3d 545, 554 (2d Cir. 2001), district courts in the Second Circuit "have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation." <u>Beaumont v. Cablevision Sys. Corp.</u>, 2012 WL 1158802, at *6 (E.D.N.Y. Apr. 9, 2012) (citing <u>Garrett v. Garden City Hotel, Inc.</u>, 2007 WL 1174891, at *21 (E.D.N.Y. Apr. 19, 2007)) (collecting cases); <u>see also</u> <u>Tuccio Dev., Inc. v. Miller</u>, 423 F. App'x 26 (2d Cir. 2011) (finding two-month gap between protected activity and

alleged adverse action was too distant to indirectly support retaliatory motive where no additional causation evidence was introduced); <u>Dechberry v. New York City Fire Dep't</u>, 124 F. Supp. 3d 131, 153-55 (E.D.N.Y. 2015) (finding six-month gap too attenuated); <u>but cf.</u> <u>Summa.</u>, 708 F.3d at 125) ("The seven-month gap between [plaintiff's] filing of the instant lawsuit and the decision to terminate her employment privileges is not prohibitively remote." (internal citations omitted)).

3.    <u>Disposition of the Motion as to Plaintiff's Title VII Claims</u>

As discussed above and construed liberally, Plaintiff's Title VII claim is two-fold. First, he claims that he was subject to a hostile working environment. Second he claims retaliatory dismissal. At this stage of the litigation, for the reasons set forth below and in light of Plaintiff's <u>pro se</u> status, the Court holds that Plaintiff states Title VII claims sufficient to survive the motions to dismiss.

First, as to a hostile environment, Plaintiff alleges six separate incidents, ranging from unwanted physical touching from a male co-worker, to derogatory, offensive and humiliating language both in the presence of clients and among other co-workers during his seven-month tenure at Ironside. <u>See</u> Am. Compl. ¶¶ 2-3, 6-8, 10-12. At this stage, when liberally construed, these allegations are sufficient to plead both an objectively and subjectively hostile work environment.

As to retaliation, Ironside challenges the sufficiency of Plaintiff's claim primarily on the third prong of his <u>prima facie</u> case. arguing that Plaintiff has failed to sufficiently allege that there was any causal connection between protected activity and his termination. Ironside Br. at 12-13. This Court disagrees. As discussed below, certain factual instances referred to by Plaintiff are insufficient to support a claim of protected activity.  However, Plaintiff's reference to the

reporting of the sexual harassment incident he witnessed in July 2016 is sufficient to survive

Rule 12(b)(6) scrutiny regarding retaliation.

To be clear, Plaintiff alleges six instances in which he believes he was subjected to

inappropriate workplace behavior, the only instance that meets the standard required for a

"protected activity" is Plaintiff's alleged reporting of an incident of purported sexual harassment

of a female co-worker to management in July 2016. In his Amended Complaint, Plaintiff alleges

that the incident he witnessed and reported violated his understanding of employment laws and

workplace policies. See Am. Compl., Claim 2 at 10, ¶ 2.  Plaintiff could have had a "good faith,

reasonable belief" that the incident he witnessed amounted to gender-based discrimination under

Title VII regardless of whether it was ultimately so severe or pervasive as to create a hostile

work environment. "The test for whether someone has 'a good faith, reasonable belief that the

underlying complained of conduct violated the law does not turn on whether the conduct was

ultimately 'severe or pervasive' enough to constitute a violation of Title VII. La Grande v.

DeCrescente Distrib. Co., 370 F. App'x 206, 212 (2d Cir. 2010) (summary order) (reversing

district court order that was based on erroneous conclusion that plaintiff could not maintain a

retaliation claim because "he could not have reasonably believed that two isolated incidents of

race-based comments, occurring more than seven months apart, could constitute misconduct that

was severe or pervasive" (internal quotation marks and citation omitted)). At this stage,

Plaintiff's reporting of the alleged incident satisfies the pleading requirements to constitute a

"protected activity."

Regarding the other five instances that Plaintiff alleges that he was subjected to

inappropriate workplace behavior and ultimately terminated due to his "refusal to participate in

the abusive culture, through misogynistic comments, offensive binger drinking or harassing

behavior…," Am. Compl., Claim 4 at 11, the incidents fail to constitute "protected activity" because Plaintiff never alleges that he actually reported any of them to his employer. While Plaintiff does allege that he attempted to report an incident of inappropriate behavior to Ironside's Human Resources department via a telephone call, he further states that the Human Resources employee "failed to return the critical call from the Plaintiff until numerous days after the incident and initial call was made. By the time his call was returned, the Plaintiff was too intimidated by his remote supervisor's actions and potential retaliation to complete the report." Am. Compl. ¶ 7. Therefore, Plaintiff's five other alleged incidents do not rise to the level of a "protected activity."

The Court recognizes the lack of immediate temporal proximity between Plaintiff's June 2016 protected activity and his termination. However, the Second Circuit has not issued a bright line to determine the outer limits for temporal proximity.  Moreover, courts in this Circuit have ruled that a seven-month gap between protected activity and termination "is not prohibitively remote." Summa, 708 F.3d at 125. Accordingly, Plaintiff has alleged sufficient facts as to his July 27, 2016 complaint to his supervisor to sustain a retaliation claim at this stage of the litigation. While the almost seven-month gap between Plaintiff's July 2016 complaint and his February 2017 termination may fall just within the outer limits of acceptable temporal proximity for such a claim, the question of causation is factual. Therefore, construing all facts in Plaintiff's favor at the pleading stage Plaintiff has alleged sufficient facts to support a Title VII retaliation claim.

For the foregoing reasons, the Court recommends that the motion to dismiss Plaintiff's Title VII claims be denied.

III.    TriNet's Motion: Plaintiff's Failure to Name TriNet in his EEOC Charge

Defendant TriNet argues that Plaintiff did not properly exhaust his administrative remedies because TriNet was not named as a respondent in Plaintiff's administrative complaint.

Title I of the ADA incorporates various provisions of Title VII of the Civil Rights Act of 1964, including 42 U.S.C. § 2000e–5 requiring a claimant to file a charge of employment discrimination naming the employer with the EEOC or authorized state agency. See 42 U.S.C. § 12117(a). Here, it is undisputed that Plaintiff failed to name TriNet in his EEOC charge.

However, the Second Circuit takes a "'flexible stance in interpreting Title VII's procedural provisions,' ... so as not to frustrate Title VII's remedial goals," and therefore it recognizes an exception to the general rule that a defendant must be named in an EEOC charge. Johnson v. Palma, 931 F.2d 203, 209 (2d Cir.1991) (internal citation omitted). This exception, the "identity of interest" exception, allows a plaintiff to proceed against a defendant not named in the administrative charge "where there is a clear identity of interest between the unnamed defendant and the party named in the administrative charge." Id.

A district court should consider four factors when determining whether there is an identity of interest between the unnamed defendant and the party named in the administrative charge:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

Johnson, 931 F.2d at 209-10 (citing Glus v. G.C. Murphy Co., 562 F.2d 880, 888 (3d Cir.1977)).

"This multi-factor test is not a mechanical one, and no single factor is dispositive." Zustovich v.

Harvard Maint., Inc., 2009 WL 735062, at *8 (S.D.N.Y. Mar. 20, 2009). "Ultimately, it is the

plaintiff who has the burden of proving that the identity of interest exception applies." Senecal v.

B.G Lenders Serv. LLC, 976 F. Supp. 2d 199, 214 (N.D.N.Y.2013). See, e.g., Sullivan v. City of

New York, 2011 WL 1239755, at *2–3 (S.D.N.Y. Mar. 25, 2011), aff'd, 484 F. App'x 628 (2d

Cir. 2012) (dismissing plaintiff's ADA claims where there was no identity of interest between

named defendants and defendants who should have been named); Hunt v. Pritchard Indus., 2007

WL 1933904, at *5–6 (S.D.N.Y. July 3, 2007) (recommending dismissal of

plaintiff's Title VII and ADA claims against union where there was no identity of interest with

named defendant); Parker v. City of New York, 2004 WL 2671634, at *3 (E.D.N.Y. Nov. 18,

2004) (finding an identity of interest between City of New York and New York City Off–Track

Betting Corporation so that plaintiff could bring her Title VII and ADA claims against both

entities, even though only the City was named in EEOC charge).

     In this case, the briefs submitted by the parties on the identity of interest issue do not

contain a full analysis of each factor. Indeed, the argument was not even raised by TriNet until

its Reply Brief. Moreover, it appears Plaintiff was acting pro se at the time of the filing of his

charge with the EEOC. See Cole v. Cent. Park Sys., Inc., 2010 WL 3747591, at *5–6 (E.D.N.Y.

Sept. 20, 2010) (the identity of interest exception is applied most commonly in the context of pro

se administrative complaints).

     Based on the limited information this Court has regarding the relationship between

TriNet and Ironside at this early stage of the litigation, the Court cannot accept TriNet's

argument that there was no identity of interest between TriNet and Ironside. When it is unclear

whether the identity of interest exception applies, courts routinely permit the unnamed parties to proceed as defendants in the action. See Jackson v. New York City Transit, 2005 WL 2664527, at *3 (E.D.N.Y. Oct. 19, 2005) ("In the context of a motion to dismiss, the Court cannot conclude, based on the limited allegations in the complaint, that there was no identity of interest between [the unnamed respondent] and [the named respondent]; thus, [the unnamed party's] motion in regard to [Plaintiffs] Title VII, ADEA, and ADA claims is denied."); Magill v. Precision Sys. Mfg., Inc., 2002 U.S. Dist. LEXIS 26689, at *10 (N.D.N.Y. Sept. 11, 2002) ("although the papers before the Court do not conclusively establish whether or not there is an identity of interest between [the named respondent] and [the unnamed respondent], the record warrants affording plaintiff an opportunity to engage in jurisdictional discovery."); Malik v. Pakistan Int'l Airlines Corp., 1995 U.S. Dist. LEXIS 10233, at *18 (S.D.N.Y. June 6, 1995) ("'it is unclear at this stage whether the 'identity of interest' exception to the charging requirement is applicable'.... Accordingly, as leave to amend is to be freely granted, it should be granted with respect to the joinder of these persons as additional defendants to the Title VII claim.") (citation omitted); Johnson v. M. Melnick & Co., 1993 WL 118512, at *1–2 (S.D.N.Y. Apr. 13, 1993) (granting plaintiff's motion to amend the complaint to add parties not named in his EEOC charge as it was unclear whether the identity of interest exception to the charging requirement was applicable, and noting that the new defendants would not be precluded from asserting this defense on their own behalf at a later date).

   As a result, to the extent that TriNet has based its motion to dismiss on the ground that TriNet was not named in the EEOC charge and TriNet does not have an identity of interest with Ironside, named in the charge, this Court recommends that TriNet's motion be denied. This

Court further recommends that TriNet not be precluded from asserting this defense in its answer so that the Court may revisit the issue on a motion for summary judgment.

<u>CONCLUSION</u>

For the foregoing reasons, this Court respectfully recommends that Ironside's motion to dismiss, appearing as Docket Entry No. 21 herein, and TriNet's motion to dismiss, appearing as Docket Entry No. 30 herein be denied in their entirety, and that this matter proceed to discovery.

<u>OBJECTIONS</u>

A copy of this Report and Recommendation is being provided to Defendants' counsel via ECF.  Furthermore, the Court directs Defense counsel to (1) to serve a copy of this Report and Recommendation by first class mail to Plaintiff at his last known addresses, and (2) to file proof of service on ECF by January 7, 2019.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. <u>Thomas v. Arn</u>, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); <u>Caidor v. Onondaga Cnty.</u>, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

Dated: Central Islip, New York
        January 4, 2019

                                          /s/ Anne Y. Shields
                                         Anne Y. Shields
                                         United States Magistrate Judge