UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
HOWARD KURLENDER,

    Plaintiff,

– against –

THE IRONSIDE GROUP, INC.,

    Defendant.
----------------------------------X

ORDER
18-CV-3839 (JFB)(AYS)

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 22 2019 ★

LONG ISLAND OFFICE

JOSEPH F. BIANCO, District Judge:

On January 4, 2019 Magistrate Judge Shields issued a Report and Recommendation (the "R&R," ECF No. 34) recommending that the Court deny the motions to dismiss plaintiff's amended complaint filed by defendants Ironside Group, Inc. ("Ironside") and TriNet Group, Inc. ("TriNet") (ECF Nos. 21, 30) in their entirety. The R&R was served on plaintiff on January 7, 2019 by both defendants. (ECF Nos. 35, 36.) On January 25, 2019, Ironside filed objections to the R&R ("Ironside's objections"). (ECF No. 39.) On February 7, 2019, plaintiff filed a letter in response to Ironside's objections ("plaintiff's response"). (ECF No. 40.) TriNet did not file any objections to the R&R. The Court has fully considered the parties' submissions. For the reasons set forth below, the Court adopts the well-reasoned and thorough R&R in its entirety.

**Standard of Review**

A district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the Magistrate Judge. *See DeLuca v. Lord*, 858 F. Supp. 1330, 1345 (S.D.N.Y. 1994); *Walker v. Hood*, 679 F. Supp. 372, 374 (S.D.N.Y. 1988). As to those portions of a report to which no "specific written objections" are made, the Court may accept the findings contained therein, as long as the factual and legal bases supporting the findings are not clearly

erroneous. *See* Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 513 (S.D.N.Y. 1997). When "a party submits a timely objection to a report and recommendation, the district judge will review the parts of the report and recommendation to which the party objected under a *de novo* standard of review." *Jeffries v. Verizon*, 10-CV-2686 (JFB)(AKT), 2012 WL 4344188, at *1 (E.D.N.Y. Sept. 21, 2012); *see also* 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.").

## Ironside's Objections

Ironside objected to the R&R on the following grounds: (1) the R&R did not address Ironside's argument that plaintiff's state law claims should be dismissed under the election of remedies doctrine under the New York State Human Rights Law ("NYSHRL"); (2) the R&R incorrectly concluded that plaintiff stated claims for (a) failure to accommodate his disability, where the only request for accommodation involved a request for a direct flight to a conference and (b) for retaliatory dismissal under the Americans with Disabilities Act of 1990 ("ADA"), because the only allegation in the Amended Complaint relating to this claim is that plaintiff was terminated for "discrimination of the disabled"; (3) the R&R incorrectly concluded that plaintiff stated a claim for hostile work environment because plaintiff did not tie any of the alleged incidents to any protected category he falls under, and because there was no allegation that any alleged incidents were reported to Ironside, which would preclude a finding of employer liability based on

these incidents; and (4) any claims for retaliation fail as a matter of law because of the gap in time between any protected activity and plaintiff's termination. (Ironside Obj., at 2-3.)

**Analysis**

Having conducted a review of the full record and the applicable law, and having conducted a *de novo* review of the entire R&R, the Court adopts the analysis and recommendations contained in the R&R, as supplemented by this Order.

<u>Dismissal of State Law Claims Pursuant to Election of Remedies Doctrine</u>

The Court concludes that, because plaintiff did not assert any state law claims in his Amended Complaint, the R&R's lack of specific analysis on Ironside's election of remedies argument as it pertains to such state law claims is of no consequence. Though Ironside asserts in its objections that "the record is undisputed that the [p]laintiff did indeed elect to proceed with his state law claims at the New York State Division of Human Rights" (*Id.* at 2), this assertion is moot as plaintiff did not assert state law claims in the instant case. In his Amended Complaint, in the section labeled "Basis for Jurisdiction," plaintiff checked only the boxes for Title VII of the Civil Rights Act of 1964 ("Title VII") and the ADA, and did not check the box for bringing a claim under a "relevant state law." (Am. Compl., ECF No. 15, at 3-4.) Additionally, in the section entitled "Statement of Claim," plaintiff asserts claims for "unlawful discriminatory practices relating to employment in violation of Title VII of the Civil Rights Act of 1964 . . . and the Americans with Disabilities Act of 1990," and makes no reference to any claims under the NYSHRL or any other state law. (*Id.* at 9.) Further, plaintiff makes no reference to the NYSHRL or any other state law in the descriptions of his claims within the Amended Complaint. (*Id.* at 9-15.) In plaintiff's memorandum in opposition to Ironside's motion to dismiss, plaintiff confirms that "the action was brought pursuant to Title VII of the Civil Rights Act of 1964 and the

Americans with Disabilities Act of 1990, and not any state statutes." (Pl. Opp., ECF No. 29, at 3.) Thus, the Court concludes that plaintiff did not actually assert any claims pursuant to the NYSHRL or any state statute, and therefore, the Magistrate Judge did not err in declining to analyze Ironside's election of remedies argument as to state law claims that do not actually exist in the Amended Complaint.

<u>Failure to Accommodate and Retaliatory Termination Claims under the ADA</u>

The Court concludes that the R&R applied the correct legal standard to plaintiff's failure to accommodate and retaliatory termination claims under the ADA, and correctly determined that plaintiff plausibly alleged these claims. Ironside objects to the R&R with respect to plaintiff's ADA claims on the grounds that (1) the R&R did not consider the content of plaintiff's request for an accommodation, "which conclusively demonstrated that the request was not tied to any purported disability" (Ironside Obj., at 8), and (2) the R&R improperly concluded that plaintiff stated a claim for retaliatory termination because it relied on plaintiff's conclusory allegation that he was terminated because of "discrimination of the disabled" (Ironside Obj., at 11).

With respect to Ironside's first objection, the Court concludes that, though the R&R did not cite directly to the content of the email chain between plaintiff and Ironside employees requesting the travel accommodation, which Ironside asserts should be incorporated by reference into the Amended Complaint, the R&R's analysis was correct. In particular, the R&R articulates that "plaintiff alleges that he was discriminated against based on his disability when he requested that he be allowed to book a direct flight to a conference on October 2016, and Ironside denied his request. Plaintiff characterizes his request for a direct flight as a request to accommodate his disability." (R&R, at 4.) The R&R continues, "[plaintiff] states that [d]efendants improperly

responded only by enforcing a 'no exceptions/no-accommodations policy' and did not ask him to provide proof of his disability.'" (*Id.* at 4-5.)

As an initial matter, the Court notes that "[f]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion." *Laface v. E. Suffolk Boces*, 349 F. Supp. 3d 126, 142 (E.D.N.Y. 2018) (quoting *Giugliano v. FS2 Capital Partners*, No. 14-cv-7240(ADS)(GRB), 2015 WL 5124796 (E.D.N.Y. Sept. 1, 2015)).

However, even assuming *arguendo* that the Court, in its discretion, considers the email chain in conjunction with Ironside's Rule 12(b)(6) motion, the Court concludes that plaintiff has plausibly stated a failure to accommodate claim. The email chain, dated October 20, 2016, between plaintiff and individuals at Ironside, including Greg Bonnette, who plaintiff alleges was his "remote supervisor" (Am. Compl., at 13), shows that plaintiff requested to change his flights to direct flights "because of health reasons to minimize the number of take offs/landings," and that plaintiff was told he would be responsible for any change fee. (Ironside MTD, Ex. B, at 2-3.) The Court notes that it appears from Exhibit B that subsequent emails on this same email chain were redacted, and as such, the Court is unaware if there is subsequent correspondence regarding the travel accommodation request that might be revealed during discovery. Plaintiff also alleges (and Ironside does not dispute) that he checked a box marked "disabled" on his new employee information form at the beginning of his employment with Ironside. (Am. Compl., Ex. B.)

The Court concludes that the content of the email chain, which reveals that plaintiff requested a change to his travel itinerary for "health reasons," in an email to two individuals at Ironside, including his alleged "remote supervisor," and being told he would be responsible for the change fee, in conjunction with plaintiff marking the box for "disabled" when he submitted his

5

new employee information form, are sufficient to satisfy the notice requirement for his disability status and need for an accommodation. *See Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 313 (3d Cir. 1999) ("What matters under the ADA are not formalisms about the manner of the request, but whether the employee or a representative for the employee provides the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation.")

Turning to Ironside's argument that the R&R improperly relied on plaintiff's conclusory allegation that he was terminated because of his disability (which the Court liberally construes to be an allegation that plaintiff was terminated in retaliation for requesting reasonable accommodations), the Court agrees with the R&R that, though this claim is thin, plaintiff has plausibly pled such a claim. It is axiomatic that district courts are required to read *pro se* complaints liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010), and to construe them "'to raise the strongest arguments that [they] suggest [ ],'" *Chavis*, 618 F.3d at 170 (quoting *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010), *aff'd*, 569 U.S. 108(2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Here, as previously discussed, plaintiff has alleged that he has a disability for which he requested accommodations on October 20, 2016. (Am. Compl., at 14.) Plaintiff has also alleged that he was terminated from his position on February 3, 2017, for supposed "poor performance," but that he had not received any ratings or evaluations as to performance, and had even been assured "that his performance was superior and that he was doing a great job." (*Id.*) Given plaintiff's allegations

that his performance was "superior," and there was no legitimate reason for his termination, and the temporal proximity of under four months between plaintiff's request for accommodations for his disability and his termination, the Court concludes that plaintiff has plausibly stated a claim for retaliatory termination because of his disability and request for accommodations. *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010) ("Close temporal proximity between the plaintiff's protected action and the employer's adverse employment action may in itself be sufficient to establish the requisite causal connection between a protected activity and retaliatory action."); *see also Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) ("We have not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship . . . This has allowed our Court to exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases.") (internal quotation and citation omitted). Here, the Court concludes that in light of plaintiff's *pro se* status, drawing all reasonable inferences in favor of plaintiff, and liberally construing the pleadings, plaintiff has plausibly pled a claim for retaliatory termination because of his alleged request for reasonable accommodations for his disability.

## Hostile Work Environment Claim

Ironside objects to the R&R on the grounds that the R&R incorrectly concluded that plaintiff stated a claim for hostile work environment under Title VII, because plaintiff did not tie any of the alleged incidents to any protected category of which he is a member, and because a finding of employer liability is precluded because plaintiff did not report any of the protected conduct to Ironside.[1] The Court disagrees.

---

[1] Ironside also asserts that plaintiff intended to assert hostile work environment claims under the ADA rather than Title VII, and that Title VII hostile work environment claims are not pled in the Amended Complaint. (Ironside

7

Plaintiff alleges in the Amended Complaint that at a company-sponsored sales event, he "witnessed verbal sexual harassment and unwanted touching of an employee, . . . who he was sitting next to at the bar area by another male employee that worked for the [d]efendants. Plaintiff also experienced *unwanted touching on his own person* committed by the same male employee . . . . This form of *unwanted touching of a sexual nature* is serious . . . ." (Am. Compl., at 12) (emphasis added). Plaintiff also alleges that he "complained about the unlawful nature of this incident of sexual harassment and unwanted touching within the hour it occurred to his supervisor and Regional Sales Manager for New York, Bryan Welch. Mr. Welch assured the plaintiff that he would let his manager as well as the CEO of the company . . . know about the incident so they could address it." (*Id.* at 13.)

The Court concludes that plaintiff's allegation that he experienced "unwanted touching" by a male employee, which plaintiff characterizes as a sexual harassment incident, is sufficient to withstand a Rule 12(b)(6) motion as to plaintiff's hostile work environment claim. *See Redd v. New York Div. of Parole*, 678 F.3d 166, 176 (2d Cir. 2012) ([E]ven a single episode of harassment can establish a hostile work environment if the incident is sufficiently 'severe.'"); *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) ("[A] single act can create a hostile work environment if it in fact work[s] a transformation of the plaintiff's workplace.")

Here, the Court concludes that at the motion to dismiss stage, plaintiff's allegation of "unwanted touching," is sufficient to state a plausible hostile work environment claim that survives the motion to dismiss. Though Ironside argues that plaintiff did not allege that the touching was "sexual in nature or in any way based on his gender" (Ironside Obj., at 14), the Court notes that

---

Obj., at 12 n. 6.) The Court disagrees. The Amended Complaint, in Claim 2 for "failing to provide a safe work environment free of hostility and threatening behavior," specifically identifies Title VII of the Civil Rights Act of 1964 as the legal basis for the claim. Plaintiff does not reference the ADA in this claim. (Am. Compl., at 10.)

8

plaintiff specifically alleges that "[t]his form of *unwanted touching of a sexual nature* is serious" (Am. Compl., at 12) (emphasis added). Plaintiff also alleges that the reason for his termination was because of "his outspoken and demonstrated opposition to witnessed *and experienced* sexual harassment . . . ." (Am. Compl., at 14) (emphasis added). Additionally, the Court follows the Second Circuit's guidance that "[i]n same-sex harassment cases . . . an inference that physical contact was because of the employee's sex may be less evident." *Redd*, 678 F.3d at 177. Further, Second Circuit authority instructs that at summary judgment, "[t]he question of whether considerations of the plaintiff's sex *caused* the conduct at issue often requires an assessment of individuals' motivations and state of mind. Issues of causation, intent, and motivation are questions of fact." *Id.* at 178. (emphasis in original) (internal quotation and citations omitted). Here, though the Court is analyzing a Rule 12(b)(6) motion rather than one for summary judgment, the Court finds the Second Circuit authority instructive. Because this case involves an allegation of same-sex unwanted touching (which plaintiff perceived as sexual harassment), for which the motivations, state of mind, and intent are as of yet unknown, the Court concludes that plaintiff has plausibly alleged a hostile work claim in violation of Title VII arising out of the unwanted touching incident.[2]

Ironside's argument that the R&R incorrectly concluded that there would be employer liability for plaintiff's claims of hostile work environment is similarly unavailing. The R&R noted that plaintiff did report the incident of alleged sexual harassment of a female co-worker that he observed in July 2016 to management. (R&R, at 18.) As discussed above, in addition to plaintiff's allegations of observed sexual harassment of a female co-worker and allegations of other incidents

---

[2] The Court notes that plaintiff further alleges that a hostile work environment existed based upon sex, by noting several incidents of harassment of female co-workers, including the use of allegedly misogynistic language and derogatory conversations among male co-workers about females. (Am. Compl., at 12-14.)

9

of harassment of females, plaintiff's claim for a hostile work environment is also based on the unwanted touching of a sexual nature that he allegedly experienced. Plaintiff alleges that he "complained about the unlawful nature of this incident of sexual harassment *and unwanted touching* within the hour it occurred to his supervisor and Regional Sales Manager for New York, Bryan Welch. Mr. Welch assured the plaintiff that he would let his manager as well as the CEO of the company, both in attendance, know about the incident so they could address it." (Am. Compl., at 13) (emphasis added). Thus, any argument that Ironside cannot be liable for the alleged hostile work environment because it did not know of the conduct, fails at the Rule 12(b)(6) stage given plaintiff's unambiguous allegation that he told his regional manager about the unwanted touching immediately after it occurred, and the regional manager informed plaintiff that he would let his superiors know about the incident. Accordingly, the Court agrees with the R&R that plaintiff's hostile work environment claim should proceed.

## Title VII Retaliation--Causal Relationship

Finally, Ironside objects to the R&R on the grounds that the R&R erred in concluding that plaintiff plausibly pled a causal relationship between his Title VII protected activity on July 27, 2016 and his termination on February 3, 2017. Ironside argues that the seven-month gap (which is actually closer to six months) between the alleged protected activity and plaintiff's termination is too remote to infer causation based on Second Circuit precedent and case law out of the Southern and Eastern Districts of New York. The Court agrees that plaintiff's case is thin on this point. However, the Court agrees with the R&R, and Ironside does not dispute, that the Second Circuit does not have a "bright line" rule regarding temporal proximity. *See Espinal*, 558 F.3d at 129. Although courts in this district and in the Second Circuit have indeed found shorter temporal gaps

to preclude an inference of causation, the Second Circuit has been clear that declining to establish a bright line rule "has allowed our Court to exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *Espinal*, 558 F.3d at 129. "Consequently, at times the Circuit has found three months to be insufficient, but eight months indicative of a causal connection." *Garcia v. Yonkers Bd. of Educ.*, No. 15 CIV. 0767 (NSR), 2018 WL 4007648, at *6 (S.D.N.Y. Aug. 21, 2018), *appeal dismissed* (Nov. 15, 2018). Importantly, the Second Circuit has not precluded an inference of causation for temporal gaps even larger than the one at issue in this case. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013) ("The seven-month gap between Summa's filing of the instant lawsuit and the decision to terminate her employment privileges is not prohibitively remote."); *Espinal*, 558 F.3d at 129 ("[W]e find that the passage of only six months between the dismissal of Espinal's lawsuit and an allegedly retaliatory beating by officers . . . is sufficient to support an inference of a causal connection."). Given plaintiff's detailed allegations that he was terminated from his position for supposed "poor performance," yet he had not received any ratings or evaluations as to performance, and had even been assured "that his performance was superior and that he was doing a great job" (Am. Compl., at 14.), in conjunction with the temporal proximity between plaintiff's protected activity and his termination, the Court concludes that plaintiff has plausibly stated a claim for retaliatory termination.

As the Court concluded in the context of plaintiff's ADA retaliation claim, here too with respect to plaintiff's Title VII retaliation claim, the Court concludes that, in light of plaintiff's *pro se* status, drawing all reasonable inferences in favor of plaintiff, and liberally construing the pleadings, plaintiff has plausibly pled a claim for retaliatory termination because of his Title VII protected activity.

11

R&R as to TriNet

TriNet did not file any objections to the R&R. In any event, in an abundance of caution, the Court has reviewed *de novo* the portions of the R&R as to TriNet. The Court agrees that TriNet's motion to dismiss based on plaintiff's failure to exhaust his administrative remedies as against TriNet should be denied. As the R&R notes, an "identity of interest" exception exists to the general rule that a defendant must be named in a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") or authorized state agency. *See Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999.) Plaintiff alleges in the Amended Complaint that "[Ironside and TriNet] were in a co-employer arrangement where Trinet [*sic*] Group, Inc. had primary responsibility for functions like payroll, benefits, etc. and were therefore both responsible for providing the [p]laintiff a safe working environment free from harassment or discrimination." (Am. Compl., at 12.) Though the Court declines at this juncture to apply the multi-factor test outlined in *Vital v. Interfaith Medical Center,* 168 F.3d at 619, to determine whether an identity of interest exists, because this issue has not been fully briefed by the parties and discovery will be informative on this issue, the Court concludes that plaintiff has sufficiently alleged an identity of interest so as to survive the Rule 12(b)(6) motion. Accordingly, the Court adopts the R&R's analysis and conclusion as to TriNet's motion to dismiss.

Accordingly,

IT IS HEREBY ORDERED that the motions to dismiss (ECF No. 21, 30) are denied in their entirety.

IT IS FURTHER ORDERED that defendants serve a copy of this Order on plaintiff.

SO ORDERED.

/s/Joseph F. Bianco
JOSEPH F. BIANCO
UNITED STATES DISTRICT JUDGE

Dated: March 22, 2019
Central Islip, NY